**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Andrew Carlson, Civil No. 02-209 (DWF/AJB)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

First Revenue Assurance,

Defendant.

---

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, 342 County Road D East, Little Canada, MN 55117, and Thomas J. Lyons, Esq., Lyons & Associates, 342 County Road D East, Little Canada, MN 55117, counsel for Plaintiff.

Brian M. Sund, Esq., and Jill N. Brown, Esq., Morrison Fenske & Sund, 5125 County Road 101, Suite 102, Minnetonka, MN 55345, counsel for Defendant.

---

## Introduction

The above-entitled matters came on for hearing before the undersigned United States District Judge on December 6, 2002, pursuant to Defendant's Motion for Summary Judgment. In the Complaint, Plaintiff alleges the Defendant violated the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff also asserts a common law claim for intrusion upon seclusion. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## Background

In May of 1999, Plaintiff Andrew Carlson ("Carlson") signed a mortgage conveying his homestead to U.S. Bank as security for a loan extended to Corey D. Lewis. At some point thereafter, U.S. Bank issued a VISA credit card to Mr. Lewis. Through some sort of

FILED DEC 1 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 1 9 2002
DEPUTY CLERK

administrative error, Carlson was listed as a guarantor for the VISA. Mr. Lewis ran up considerable charges on the VISA account and failed to make payments. Accordingly, U.S. Bank referred the debt to Defendant First Revenue Assurance ("FRA") for collection against Carlson.[1]

The record indicates that, over the course of five months, FRA sent Carlson six letters regarding the debt. Three of the six letters provided two post office box addresses, one in Seattle, Washington, and one in Denver, Colorado. Those three letters clearly state (in bold print) that only payments should be sent to the Seattle post office box and that all correspondence should be sent to the Denver address. There is no apparent dispute that FRA has obtained a license, pursuant to Minn. Stat. § 332.33, to collect debts in Minnesota from the Denver address. The Seattle address is not licensed.

In his Complaint, Carlson indicates that he called FRA repeatedly and informed them that he did not owe the debt at issue. FRA denies receiving any such calls, and Carlson has not provided any evidence other than his assertions in the Complaint.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92

---

[1] Apparently U.S. Bank eventually admitted to the error and no longer considers Carlson to be responsible for the VISA debt. There is no evidence in the record, however, that U.S. Bank ever informed FRA of U.S. Bank's error or ever instructed FRA to cease collecting the debt.

F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. FDCPA**

Carlson argues that FRA's failure to obtain a license for the Seattle post office box is a per se violation of the FDCPA by virtue of being a violation of state law. The Court disagrees. Specifically, the Court finds that Minnesota law does not require FRA to obtain a license for a post office box that serves as a payment "lockbox."

Pursuant to Minnesota statute, a debt collector "who desires to carry on business in more than one place shall procure a license for each place where the business is to be conducted." Minn. Stat. § 332.33, subd. 3. A license is thus required for every location from which a person "engage[s] . . . in the business of collecting claims for others . . . ." Minn. Stat. § 332.33, subd.1. The statute does not define what is meant by the "business of collecting," but Carlson argues that

the activity that occurs at the Seattle post office box–specifically, U.S. Bank opening payments, registering those payments, transferring the appropriate funds to FRA's account, and notifying FRA of the transactions–constitutes collection of debt.

However, FRA does not actually do anything at all at the Seattle address. Rather, U.S. Bank performs certain services for FRA at that address. Minnesota statute exempts certain entities engaged in certain activities from the definition of collection agency. In section 332.32, the statute states "[t]he term 'collection agency' shall not include persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency such as, but not limited to . . . abstract companies doing an escrow business, . . . credit unions, [and] savings associations." The statute, then, makes exceptions for businesses that merely engage in the administrative processing of payments and do not engage in the active solicitation of debtors to pay their debts. Although banks processing payments for collection agencies are not specifically listed among those entities excepted, the type of services performed by U.S. Bank in this case are analogous to the types of services provided by the entities that are specifically listed.

Moreover, as FRA notes, the activities conducted from the Seattle address are those that are routinely performed by banks on behalf of numerous clients, both collection agencies and others. Using the lockbox method is the equivalent of FRA receiving the payments at its Colorado address and then forwarding them to U.S. Bank for processing. If Carlson is correct that the activities undertaken by U.S. Bank in this case constitute "the business of collection," then every bank branch that maintains an account for a debt collection agency that collects debts in Minnesota would be required to obtain a Minnesota license. That result is absurd.

Accordingly, the Court finds that the activities undertaken by U.S. Bank at the Seattle address do not constitute the business of collection within the meaning of the Minnesota statutory scheme. As a result, Minnesota statutes do not require the Seattle address to be licensed, there was no violation of Minnesota law, and, thus, there was no violation of the FDCPA by virtue of directing payments to the unlicensed Seattle post office box.

Carlson argues, in the alternative, that the use of the Seattle post office box constitutes a violation of the FDCPA because, if U.S. Bank was actually the entity conducting business at that address, the listing of the address as belonging to FRA constitutes a misrepresentation. The Court again must disagree. As noted above, the activity in which U.S. Bank engaged is not debt collection; FRA is collecting the debt. Moreover, there is nothing misleading about the Seattle post office box address: it is a legitimate address for a post office box that is held in the name of FRA and, thus, the address as listed is correct. In short, there is nothing misleading about the use of the post office box address at all.

### 3. Intrusion Upon Seclusion

Minnesota has only recognized the tort of intrusion upon seclusion since 1998. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998).

> The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy. There is no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object. In the context of intrusion upon seclusion, questions about the reasonable person standard are ordinarily questions of fact, . . . but they become questions of law if reasonable persons can draw only one conclusion from the evidence.

*Swarthout v. Mutual Service Life Ins. Co.*, 632 N.W.2d 741,744-45 (Minn. Ct. App. 2001) (citations omitted, brackets and ellipses in original).

The Court finds that no reasonable fact-finder could conclude, from the facts in the record, that FRA's actions constituted a highly offensive intrusion upon Carlson's legitimate expectation of privacy. The record indicates that FRA sent six dunning letters to Carlson over the course of five months. The last letter stated that FRA would investigate Carlson's assets, but the other letters were offers of settlement (for less than the full amount of the alleged debt) or other similar letters urging payment. In *Bauer v. Ford Motor Credit Co.*, 149 F. Supp. 2d 1106 (D. Minn. 2001), a case relied upon by Carlson, the court notes that it had originally ruled as a matter of law that the contact at issue was not sufficiently offensive to support a claim for tortious intrusion upon seclusion[2]; the contact deemed insufficient was four messages left on the alleged debtor's answering machine, phone contact with four neighbors or relatives of the alleged debtor and one employer, and one repossession attempt. The contact initially considered in *Bauer* and found not to support a claim for intrusion upon seclusion was far more intrusive and offensive than the contact alleged here.

Carlson argues that the conduct of FRA is rendered more offensive than it would appear by virtue of the fact that, according to Carlson, he told FRA that he did not owe the debt.[3]

---

[2] The opinion cited by Carlson was issued on a motion for reconsideration. During reconsideration, the court considered evidence in the record of additional contacts and other extenuating circumstances that raised the contact to a level that it could be construed as highly offensive.

[3] In the Complaint, Carlson alleges that he told FRA repeatedly that he did not owe the money, but there is no supporting affidavit or deposition testimony in the record. Even in the Complaint, Carlson does not allege that he sent FRA a letter or that he had an attorney or other third party contact FRA on his behalf to vouch for him.

Carlson again cites the *Bauer* decision. In that case, the court held that the circumstances in that case–where the alleged debtor, numerous relatives and neighbors, the local sheriff, the postmaster, and an attorney all informed the creditor that the debt was not owed–a reasonable person could regard the creditor's persistent attempt to collect the debt as highly offensive conduct. Yet the court in that case noted that "a reasonable person should expect that a company charged with collecting a delinquent account would display a certain degree of persistence when the person on the other end of the telephone [the alleged debtor] denies responsibility for a debt." *Bauer*, 149 F. Supp. 2d at 1111. This case and *Bauer* are readily distinguishable. FRA did not receive information about the debt from third parties, only from the alleged debtor himself, and the quantity and quality of the contacts FRA made were so minimal that, as a matter of law, they cannot be construed as highly offensive.

The Court concludes that Carlson's claim for intrusion upon seclusion fails as a matter of law.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. No. 13) is **GRANTED** and the **COMPLAINT** is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 19, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

## NOTICE

The latest amendments to the federal rules of procedure, (Civil, Criminal, Appellate and Bankruptcy), went into effect on December 1, 2002. The new amendments and related committee notes can be found at www.uscourts.gov/rules/amendments0202.htm.

One change is particularly noteworthy. That is Rule 7.1 of the Federal Rules of Civil Procedure. This rule requires that corporations file a "disclosure statement" whenever they initially appear as a party in a federal court action. The Rule 7.1 Disclosure Statement must identify "any parent corporation and any publicly held corporation that owns 10% or more" of the stock of the corporate party filing the statement. The purpose of the disclosure statement is to help judges and magistrate judges identify potential conflicts of interest. (Similar disclosure statement requirements are prescribed by Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 12.4 of the Federal Rules of Criminal Procedure.)

Beginning December 1, 2002, a Rule 7.1 Disclosure Statement must be filed by every corporation when it first appears in a federal action, even if the corporation merely reports that there is no parent corporation or publicly held corporation that owns 10% or more of its stock. These Disclosure Statements must also be filed retroactively, for every corporation which is a party to an action pending in this District as of December 1, 2002. The retroactive Rule 7.1 statements must be filed immediately.

It also should be noted that there have been extensive stylistic changes, (as well as a few substantive changes), to the Federal Rules of Criminal Procedure. Attorneys who appear in federal criminal cases should review the amended version of the Rules.