SCANNED
APR 4 2004
VEM
U.S. DISTRICT COURT ST. PAUL

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-1772

CV 02-209 DWF/AJB

| | | |
|---|---|---|
| Andrew Carlson, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| First Revenue Assurance, | * | |
| | * | |
| Appellee. | * | |

Submitted: December 19, 2003

Filed: March 3, 2004

Before MORRIS SHEPPARD ARNOLD, LAY, and RILEY, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Andrew Carlson appeals from a summary judgment entered against him and from the denial of his motion to alter or amend the judgment, *see* Fed. R. Civ. P. 59(e), in his action against First Revenue Assurance (FRA), a collection agency. We affirm the district court's[1] orders.

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

I.

This case arises out of FRA's debt collection activities with regard to an alleged debt that Mr. Carlson owed to one of FRA's clients. FRA sent six letters to Mr. Carlson, who it appears did not actually owe the debt, demanding payment. Mr. Carlson asserts that he contacted FRA to notify them of the error, but FRA denies receiving any such information from either Mr. Carlson or FRA's client.

Mr. Carlson filed a civil suit against FRA claiming that FRA's practice of having debt payments sent directly to its unlicensed Seattle, Washington, post office box violated Minn. Code § 332.33, and thus also violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692o. The Minnesota statute requires that a debt collection agency collecting debts in Minnesota be licensed at each location from which it conducts business, and the only Minnesota license that FRA had was for its Denver, Colorado, headquarters. The statute applies to "any person engaged in the business of collection for others." *See* Minn. Stat. § 332.31.3; *see also* Minn. Stat. § 332.33.1. The statute does not define the "business of collection," and there is no guidance on that matter from the Minnesota courts.

FRA filed a summary judgment motion arguing that no collection activity occurred at the unlicensed Seattle post office box. In the alternative, FRA maintained that even if collection activity was occurring in Seattle, the violation of Minnesota's collection agency licensing statute did not violate the FDCPA. Mr. Carlson countered that if FRA was not conducting collection activity in Seattle, the use of the Seattle address constituted a false or misleading representation which is a separate violation of the FDCPA. *See* 15 U.S.C. § 1692e. The district court granted FRA's motion, and Mr. Carlson filed a motion to alter or amend the judgment, *see* Fed. R. Civ. P. 59(e), which the district court denied.

II.

We begin with a brief description of FRA's debt collection practices. Once an FRA client asks FRA to begin collection, FRA sends letters to the debtor offering varying terms of repayment. These letters include remittance slips that direct the debtor to send payments only to the FRA-owned Seattle post office box and to send all other correspondence to FRA's Denver address. When payments are sent to the Seattle post office box, they are retrieved by U.S. Bank employees who, using an automated process and the remittance slips, credit the payments to FRA's trust account held at the bank. U.S. Bank electronically provides FRA with information every day about which debtors made payments and the amount of those payments. FRA then contacts its clients and informs them about which debts have been satisfied. Meanwhile, U.S. Bank sends all the paperwork that it has collected to FRA's Denver address. If mail other than payments is received at the Seattle post office box, it is immediately forwarded (unopened if possible) to the Denver address. In this way, the Seattle post office box operates as a "lockbox." U.S. Bank provides a similar service to other large customers receiving payments through the mail, such as utility companies, phone companies, department stores, and government agencies.

Mr. Carlson argues that because collecting payments is an inherent part of a collection agency's business, use of the U.S. Bank payment crediting service by a collection agency is different from other companies using a similar service. According to Mr. Carlson, because FRA is in the business of collecting money rather than, for example, providing energy, the processing of FRA's checks by U.S. Bank is tantamount to collection activity by U.S. Bank on behalf of FRA. If Mr. Carlson is correct, however, the Seattle lockbox would have to be licensed even if the debtor's payments were sent directly to the Denver address and forwarded to FRA's bank through the Seattle lockbox. All banks processing payments to a collection agency would in essence become collection agencies and require licenses. This makes scant sense.

We believe that U.S. Bank is engaged in banking, not collecting. U.S. Bank processes the payments received at the Seattle lockbox, but it does not post or collect payments in the sense that a collection agency does. U.S. Bank merely handles the mail. U.S. Bank does not send out collection letters or have any contact with FRA's clients. A collection agency's role, on the other hand, is to contact debtors and secure payment on behalf of its clients. U.S. Bank does not secure payment on behalf of FRA or have any contact with debtors. U.S. Bank is essentially providing the same service to FRA as it would if payments were sent to FRA's Denver address before being forwarded to FRA's bank for processing. There is no collection activity taking place in Seattle.

While FRA is clearly within the statute's definition of a collection agency, *see* Minn. Stat. § 332.31.3, we believe that U.S. Bank is not. U.S. Bank is the only entity undertaking any activity in Seattle, and none of that activity qualifies as collection activity. Indeed, the Minnesota debt collection statute specifically exempts entities similar to U.S. Bank from the definition of a collection agency. *See* Minn. Stat. § 332.32.

The purpose behind the Minnesota requirement that all locations be licensed is to ensure that if a collection agency abuses its license, Minnesota regulators know where to find it. If FRA's Seattle address was licensed, even ignoring the Minnesota statute that requires a licensee to provide a street address rather than a post office box, *see* Minn. Stat. § 45.0112, Minnesota regulators seeking accountability from FRA in Seattle would find only a bank account. FRA is, and always has been, located in Denver. This is its location, and on the record in this case it is the only location that needs to be licensed.

The record reveals that Minnesota Department of Commerce regulators do not require licensing of lockboxes such as FRA's; all they require is that the remittance slips prominently state that only payments should be sent to the lockbox and that all

other correspondence should be sent to the licensed address. While the agency's position is not binding on us, its interpretation increases our confidence in the result that we have come to.

Because FRA did not violate the Minnesota debt collection statutes, we address only briefly the question of whether such a violation would constitute a violation of the FDCPA. Mr. Carlson relies heavily on *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446 (8th Cir. 2001), for his argument, but we agree with the district court that Mr. Carlson's reading of *Picht* is too broad. The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation. Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA violations. *See* 15 U.S.C. § 1692e(5); *Picht*, 236 F.3d at 448. In contrast to the collection agency's actions in *Picht*, even if FRA was violating Minnesota law by not having the Seattle lockbox licensed (and we have concluded that it was not), that violation would not constitute a false or misleading representation.

Mr. Carlson also argues that if FRA is not operating in Seattle, this constitutes a separate violation of the FDCPA because the Seattle address is a false or misleading representation. *See* 15 U.S.C. § 1692e. The Seattle lockbox, however, is owned by FRA, so the address on the remittance slip does not amount to a misrepresentation. Essentially, the Seattle lockbox is the address of FRA's trust account. Debtors sending payments to the Seattle lockbox are sending payments to FRA, so there is no misrepresentation in using the lockbox address. FRA is not conducting the business of collection in Seattle (and thus need not be licensed in Seattle), but it is not misleading debtors about where their payments are being sent or into whose bank account they are being deposited.

III.

For the reasons stated above, we affirm the district court's grant of summary judgment. Because Mr. Carlson's motion to alter or amend the judgment simply restated the arguments that we have already addressed, we also affirm the district court's denial of that motion.

______________________________